UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL JORDAN,

                      Plaintiff,                Civil Action File No.

    -against-

                                    COMPLAINT
                              Plaintiff Demands a Jury Trial
VIACOM OUTDOOR GROUP and
LOCAL 153, OFFICE AND PROFESSIONAL
EMPLOYEES INTERNATIONAL UNION -
AFL-CIO,

                      Defendants.
------------------------------------------------------------X

        Plaintiff, SAMUEL JORDAN, residing in the County of Bronx, State of New York, by his attorney, AARON WOSKOFF, ESQ., complaining of defendant, respectfully alleges:

### JURISDICTION

        1.  This is an action authorized by and instituted pursuant to Section 301 of the Labor Management Relations Act of 1947 (29 USCA Section 185) here referred to as the Act to recover damages for plaintiff's unlawful discharge by defendant Viacom Outdoor Group (Viacom), plaintiff's employer, and for breach by defendant Local 153, Office & Professional Employees International Union AFL-CIO, here referred to as defendant union, of its duty of fair representation owing to plaintiff, and for reinstatement by defendant employer and resultant damages.

        2.  That plaintiff is an individual residing in Bronx, New York.

        3.  That upon information and belief, defendant Viacom is a corporation organized and existing under the laws of the State of New York, within the territorial

jurisdiction of this Court.  Defendant Viacom is engaged in the maintenance and sale of advertising space in interstate commerce and, at all times mentioned, was an employer in an industry affecting commerce, as defined by Sections 501(1) and (3) and 2(2) of the Labor-Management Relations Act (20 USCA Section 142(1) and (3) and 29 USCA Section 152(2), and within the meaning of Section 301 of the Act (29 USCA Section 185).

      4.  Plaintiff was employed by defendant Viacom on August 20, 2001 as an installer and was continuously in defendant employer's employ in such classification until December 14, 2004, when plaintiff was unlawfully discharged by such defendant.

      5.  That Defendant Union now is, and at all times mentioned was, a labor organization representing employees in an industry affecting commerce as defined in Sections 501(1) and (3) and 2(5) of the Act (29 USCA Section 142(1) and (3) and 29 USCA Section 152(5) and within the meaning of Section 301 of the Act (29 USCA Section 185).  During all times mentioned, defendant union was the recognized collective bargaining representative of the bargaining unit consisting of defendant employer's employees, including plaintiff, employed with regard to defendant employer's New York City subway advertising franchise agreement with the New York City MTA.

      6.  On January 1, 2004, defendant employer and defendant Union entered into a collective bargaining agreement covering the employees, including plaintiff, in the above-mentioned bargaining unit, which agreement and its predecessor was in force during the entire period involved here.  Both defendants have copies of the agreement, and for that reason none is attached to this complaint.  The agreement was entered into by defendants for the benefit of the employees in the bargaining unit, and plaintiff, as a

member of such bargaining unit, is accordingly entitled to the benefit of the agreement and to enforce the provisions of the agreement.

   7.  As appears from the agreement, Article 12, entitled "Discharge and Layoff", provides that no employee covered by the agreement shall be discharged without "just cause".  Such Article reads in full as follows: "No non-probationary bargaining unit employee will be discharged or disciplined without just cause."  Further, Article 15 of the collective bargaining agreement, entitled "Grievance and Arbitration" establishes a procedure culminating in binding arbitration for the presentation, negotiation, settlement or other disposition of grievances, and expressly provides that all cases of discharge, for whatever cause, shall be subject to the grievance procedure.  This Article reads in full as follows: "Section 1: A grievance within the meaning of this agreement shall be any difference of opinion, controversy or dispute arising between the parties hereto relating to any matter of wages, hours and working conditions or any dispute between the parties involving interpretation or application of any provision of this agreement" and "Section 5: It shall be the intention of the parties to settle all differences between the company and the union through grievance machinery and arbitration in accordance with the provision of this Agreement".

NATURE OF PROCEEDINGS

 8. This is an action for damages for unlawful discharge, including:

  (a) Back pay;

  (b)  Forward pay;

  (c)  Liquidated damages;

  (d)  Compensatory damages;

(e)  Punitive damages;

(f)  Counsel fees;

(g) Reinstatement;

(h)  Pain and Suffering; and

(i)  All as may be provided pursuant to law together with such other and further relief as may be necessary and proper to secure the plaintiff's damages.

## PARTIES

9.  That at all times herein mentioned defendant Union, upon information and belief, was and still is an association organized and operating under the laws of the State of New York, and is the exclusive bargaining agent for all permanent and part time employees and is authorized to do business in the State of New York with offices at 265 West 14th Street, New York, New York.

10.  That at all times herein mentioned defendant Viacom, upon information and belief,  was and still is a corporation with offices at 405 Lexington Avenue, New York, New York, organized and operating under the Laws of the State of New York.

11.  That plaintiff was employed by defendant from on or about August 20, 2001 through December 14, 2004 as an Installer.

## AS AND FOR A FIRST CAUSE OF ACTION

### THE FACTS CONCERNING
### THE COMPLAINT

12.  That said plaintiff was employed by defendants from August 20, 2001 when he was hired as an Installer.

13.  As alleged above, plaintiff was discharged by defendant employer on

or about December 14, 2004.  The verbal notice of discharge recited, as the supposed reason for the discharge, that plaintiff was falsifying information.  Plaintiff denies that he had ever been falsifying information and further denies that there was just cause for dismissal as it required by the union contract.

      14.  That plaintiff worked on December 13 on his B Route installing posters.

      15.  That a co-worker of plaintiff advised him that he was missing posters as they were not up.  As plaintiff did the route on Thursday, he called the office and asked for posters.

      16.  That plaintiff's bundle of posters did not come and his boss, Don (last name unknown at this time) was to bring same to him.

      17.  That plaintiff called him at 7:00 a.m. and was told to have breakfast.

      18.  That plaintiff again called at 7:30 a.m. and was told to call back at 8:00 a.m.

      19.  That plaintiff again called at 8:00 a.m. and was told to call back at 8:30 a.m.

      20.  That at 8:30 a.m. plaintiff was told by his boss to meet him at Pelham Parkway in the Bronx, although plaintiff was in Queens.

      21.  That his boss asked plaintiff if he posted for that day and plaintiff advised him that he had not yet had an opportunity as his boss directed him to delay and wait through the earlier part of the morning.

      22.  That he went with his boss to several stations and some of the posters were up and others were not, as they were posted outside and had fallen off

from the rain.

23. That plaintiff's boss then told plaintiff to go home.

24. That thereafter plaintiff received a call from defendant advising him to come in that Thursday.

25. That plaintiff came in as requested and was fired.

26. That the following week plaintiff returned to defendant Viacom with his union representative and went to the Grievance Board.

27. That plaintiff asked for the work sheet, however, the union did not have same.

28. The Union advised plaintiff that they would get in touch with him.

29. That plaintiff thereafter received a letter dated January 14, 2005 from the Union advising him that they had reviewed his case as thoroughly as possible and that after full consideration of all the facts that they determined that his case is not arbitrable.

30. That thereafter and on January 28, 2005, plaintiff received a letter dated January 28, 2005 from the Union stating that plaintiff, as an employee of defendant Viacom, was discharged by his employer in December, 2004 and that he filed a grievance with the union and went through the steps of the grievance procedure.

31. That plaintiff alleges that defendant union, in breach of its statutory duty of fair representation owed to plaintiff under the provisions of the Act, conspired with defendant employer to permit plaintiff's discharge to stand, although there was no just cause for the discharge; that the negotiations between defendant employer and defendant union with respect to plaintiff's grievance were spurious, carried on in bad

faith, and deliberately designed to give plaintiff the false impression that a sincere effort was being made by defendant union to resolve the grievance by securing plaintiff's reinstatement: that, unknown to plaintiff, the officials of defendant union, including the officer who had promised to take plaintiff's grievance to arbitration, were secretly hostile to plaintiff and had decided to acquiesce in plaintiff's discharge; that at grievance meetings of defendant employer and defendant union that were not attending by plaintiff, it was agreed between defendant employer and defendant union that defendant employer's action would not be opposed and that a demand for arbitration of plaintiff's discharge would not be made by defendant union.

32. That as above stated, plaintiff received a letter dated January 14, 2005 from the Union advising him that they had reviewed his case as thoroughly as possible and that after full consideration of all the facts that they determined that his case is not arbitrable.

33. That as a result of plaintiff's discharge by defendant employer, in violation of plaintiff's rights under the collective bargaining agreement, and in breach by defendant union of its duty of fair representation owing to plaintiff, plaintiff has suffered grievous and extensive damages.

34. That plaintiff desires to be reinstated to plaintiff's former job at defendant employer and alleges that he is entitled to such reinstatement retroactive to the date of discharge, without any break in seniority.

35. That as a result of the foregoing, plaintiff has been damaged in the

sum of $1,000,000.00.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $1,000,000.00 together with judgment for damages for pain, suffering, mental anguish, reinstatement, as well as punitive damages together with interest and a reasonable attorneys fee as the Court deems proper as well as costs, interest and disbursements and such other and further legal and equitable relief as this court deems just and proper.

_____
AARON WOSKOFF (AW-7853)
Attorney for Plaintiff
Office & P.O. Address
201 Moreland Road, Suite 10
Hauppauge, NY 11788
631 543-3933