UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SAMUEL JORDAN,                                         :         05 Civ. 5497 (SHS)
                                                       :
                         Plaintiff,                    :
                                                       :         OPINION AND ORDER
             -against-                                 :
                                                       :
VIACOM OUTDOOR GROUP and LOCAL 153,                    :
OFFICE AND PROFESSIONAL EMPLOYEES                      :
INTERNATIONAL UNION-AFL-CIO,                           :
                                                       :
                         Defendants.                   :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Plaintiff Samuel Jordan brings this action against his former employer Viacom Outdoor Inc. (now known as CBS Outdoor Inc.) ("Outdoor") and Local 153 of the Office and Professional Employees International Union, AFL-CIO ("the Union") pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Jordan alleges that (1) Outdoor discharged him without cause in violation of the applicable collective bargaining agreement ("CBA") that the Union had entered into with Outdoor and (2) the Union breached its duty of fair representation by declining to arbitrate his grievance.  Plaintiff seeks damages and reinstatement.  Outdoor and the Union have moved separately for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Because plaintiff has failed to produce sufficient evidence for a jury to find that the Union breached its duty of fair representation – the threshold issue in this litigation – defendants' motions for summary judgment are granted.

1

**I.    BACKGROUND**

The following facts are undisputed. Outdoor is a media company in the business of placing advertisements throughout New York City's subway system. (Outdoor's Local Civil Rule 56.1 Statement of Material Facts ("Outdoor's 56.1") ¶ 1, Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement of Material Facts ("Pl.'s Response") ¶ 1.) From August 2001 until December 2004, Outdoor employed Jordan as an advertisement installer who installed and removed commercial advertisements in subway cars and platforms. (Outdoor's 56.1 ¶¶ 2-5, Pl.'s Response ¶¶ 2-5.) As an Outdoor employee, Jordan was a member of the Union, which had signed a CBA with Outdoor containing a provision that authorized Outdoor to terminate an employee for "just cause" and granted employees certain procedures for "grievance and arbitration." (Union's Local Civil Rule 56.1 Statement of Material Facts[1] ("Union's 56.1") ¶¶ 1, 3; Compl. ¶¶ 5-7; Decl. of Megumi Sakae dated Apr. 21, 2006 ("Sakae Decl."), Ex. H at 9, 11-12.)

From August 2004 until his discharge in December 2004, Jordan put up advertisements on indoor and outdoor subway platforms along five different routes.

---

[1] Plaintiff has not filed a response to the Union's statement of material facts as required by Rule 56.1(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. The U.S. Court of Appeals for the Second Circuit has determined that when a party opposing summary judgment "fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule 56.1(c)). Because plaintiff did not controvert any fact listed in the Union's Rule 56.1 statement, this Court could consider the entirety of the Union's statement admitted by plaintiff. Nevertheless, this Court will proceed with an "assiduous review" of the factual record, despite plaintiff's failure. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal quotation marks omitted).

(Outdoor's 56.1 ¶¶ 5-6, 13; Pl.'s Response ¶¶ 5-6, 13.)  Each day, he would receive a bundle of posters and a work sheet indicating where the advertisements should be placed and which old posters should be removed.  (Outdoor's 56.1 ¶¶ 14, 17; Pl.'s Response ¶¶ 14, 17.)  Jordan tracked his progress on the work sheet, indicating which posters had been installed and which had been removed.  (Outdoor's 56.1 ¶¶ 19-20, Pl.'s Response ¶¶ 19-20.)  At the end of each day, Jordan signed the work sheet underneath a "certification" that read: "I certify that all work was assigned to me on this form was completed by me on this day the hours designated!  I have also completed any repairs given to me as well."  (Outdoor's 56.1 ¶ 21, Pl.'s Response ¶ 21, Decl. of Donald Dorion dated Apr. 20, 2006 ("Dorion Decl."), Ex. 1.)  After completing the work sheet and signing it, Jordan returned the document to Outdoor management.  (Outdoor's 56.1 ¶ 24, Pl.'s Response ¶ 24.)

On December 9, 2004, Donald Dorion – Jordan's immediate supervisor at Outdoor – received complaints about the appearance of advertisements posted in a subway station from the station manager on one of Jordan's routes, and Dorion inspected five stations along this route on the following day.  (Outdoor's 56.1 ¶¶ 33-35, Dorion Decl. ¶¶ 10-11.)  Dorion compared the posters that were hanging at each of the five stations with Jordan's signed work sheets for those stations.  (Outdoor's 56.1 ¶¶ 36-37, Dorion Decl. ¶¶ 12-13.)  At four of these stations, Dorion observed discrepancies between the posters hanging on the subway walls and the poster installations Jordan certified that he had completed.  (Outdoor's 56.1 ¶¶ 41-44, Dorion Decl. ¶¶ 21-24.)  Based on his inspection, Dorion concluded that thirteen posters certified by Jordan as having been posted were, in fact, not installed.  (Outdoor's 56.1 ¶ 45, Dorion Decl. ¶ 25.)

3

The following week, Jordan accompanied Dorion and another supervisor on an inspection of these four stations. (Outdoor's 56.1 ¶¶ 48-49, Pl.'s Response ¶¶ 48-49.) At each station they inspected, posters were missing. (Outdoor's 56.1 ¶ 50, Pl.'s Response ¶ 50.) Two days later, Jordan met with senior managers of Outdoor to discuss the discrepancies between his work sheets and the posters installed at the four subway stations. (Outdoor's 56.1 ¶ 53, Pl.'s Response ¶ 53.) The next day, Outdoor terminated Jordan's employment for "falsifying information." (Compl. ¶ 13, Dep. of Samuel Jordan dated Jan. 19, 2006 ("Jordan Dep.") at 133:12-23, Union's 56.1 ¶ 6.)

Approximately one week later, on December 23, 2004, Jordan met with two Union representatives – Michael Thompson (the Union's business agent) and Vincent Bracero (the Union's shop steward) – and three Outdoor officials in order to attempt to explain the discrepancies between his work sheets and the advertisements posted along his subway route, but the Union representatives were unable to obtain Jordan's reinstatement. (Outdoor's 56.1 ¶¶ 60-61, Pl.'s Response ¶¶ 60-61.) After the meeting, Thompson scheduled a date for Jordan to appear before the Union's Grievance Committee. (Outdoor's 56.1 ¶ 66, Pl.'s Response ¶ 66.)

The Grievance Committee is a Union body comprised of several of the Union's senior business agents, often including an attorney, who review the grievances filed by union members in order to determine which ones should proceed to arbitration. (Sakae Decl., Ex. F (Hoffman Dep.) at 6:7-10.) According to the chairperson of the Grievance Committee, the committee's job is to "make sure that the cases that go forward [to arbitration] are cases that [the Committee] believes are true." (Id. at 6:11-13.) On January 13, 2005, Jordan appeared before the committee and responded to the members'

4

questions. (Outdoor's 56.1 ¶ 67, Pl.'s Response ¶ 67, Union's 56.1 ¶ 9, Sakae Decl., Ex. F (Hoffman Dep.) at 6:18-8:21.) The Grievance Committee concluded that Jordan's statements were "not credible" and decided against taking Jordan's grievance to arbitration. (Union's 56.1 ¶ 10, Compl. ¶ 29, Sakae Decl., Ex. F (Hoffman Dep.) at 8:10-21.) Five months later, Jordan commenced this litigation.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); LaFond v. Gen. Physics Serv. Corp., 50 F.3d 165, 171 (2d Cir. 1995). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). On a motion for summary judgment, the court must scrutinize the record and grant or deny summary judgment as the record warrants. Fed. R. Civ. P. 56(c). However, when determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also LaFond, 50 F.3d at 171.

Nevertheless, the party opposing summary judgment "must offer some hard evidence" in support of its factual assertions, D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), such that "'there is sufficient evidence favoring the nonmoving

5

party for a jury to return a verdict for that party.'" Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 249). Evidence that is "merely colorable" or "not significantly probative" is insufficient to prevent a court from granting summary judgment. Anderson, 477 U.S. at 249-50. Thus, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

      B.      Jordan's Hybrid Section 301/Duty of Fair Representation Claim

Jordan claims to be the victim of two breaches: Outdoor's breach of the CBA when it allegedly fired him without cause and the Union's breach of its duty of fair representation. These breaches are actionable pursuant to the Labor Management Relations Act in so-called "hybrid section 301/duty of fair representation" suits. White v. White Rose Food, 237 F.3d 174, 179 & n.3 (2d Cir. 2001). To prevail on a hybrid claim, Jordan must demonstrate that both Outdoor and the Union committed the breaches alleged. See Sanozky v. Int'l Ass'n of Machinists & Aero. Workers, 415 F.3d 279, 282 (2d Cir. 2005) ("To prevail on a hybrid § 301/duty of fair representation claim, [plaintiff] must demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the union] breached its duty of fair representation.") (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)).

In a hybrid section 301/duty of fair representation action, the "threshold issue" is whether the union has breached its duty of fair representation. Young v. U.S. Postal Service, 907 F.2d 305, 307 (2d Cir. 1990). The U.S. Court of Appeals for the Second Circuit has explained that "the Union's breach is a prerequisite to consideration of the

6

merits of plaintiff's claim against [a] former employer for improper discharge." Id. (citing DelCostello, 462 U.S. at 164-65). In order to show that a union has breached its duty of fair representation, a plaintiff must show that the union's "conduct toward a member of the bargaining unit [was] arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998). If a plaintiff cannot make this threshold showing, his hybrid section 301/duty of fair representation action fails, and neither the union nor the employer can be held liable for his discharge. See DelCostello, 462 U.S. at 164-65.

Here, Jordan contends that the Union breached its duty of fair representation by failing to take his grievance to arbitration. The thrust of Jordan's argument is that although the Union had taken the grievances of other union members facing termination to arbitration, it had declined to do so for him.[2] In defense of its decision, the Union points out that its Grievance Committee determined that Jordan's testimony was "not credible" and claims that it simply declined to advance what it considered a meritless grievance. (Sakae Decl., Ex. F (Hoffman Dep.) at 8:10-21.)

Courts reviewing a union's decision not to take a grievance to arbitration must afford the union adequate latitude so as not to impede its effectiveness as a bargaining unit. According to the U.S. Supreme Court, "a union must be free to sift out wholly frivolous grievances which would only clog the grievance process. . . ." Humphrey v. Moore, 375 U.S. 335, 349, 84 S. Ct. 363, 11 L. Ed. 2d 370 (1964). Indeed, courts traditionally grant unions a "wide range of reasonableness" so that the "union [has] room

---

[2] Jordan does not indicate whether he believes the Union's conduct was arbitrary, or discriminatory, or in bad faith, or all three combined. Jordan did testify at his deposition that he had no reason to believe that he was the victim of racial discrimination. (Jordan Dep. at 165:8-9.) However, in light of plaintiff's perfunctory inclusion of "arbitrary, discriminatory, and in bad faith" in his memoranda of law, this Court analyzes plaintiff's claims along all three lines.

7

to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez, 525 U.S. at 45-46. Thus, a union is not required to pursue every grievance brought by its members, and a court must focus on the motive animating the union's decision, and not on the competence of the union's decision-making process or the effectiveness of its tactics. See Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989) ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.").

### C. The Evidentiary Record

In this case, Jordan has failed to offer any evidence that the Union's treatment of his grievance was outside the "wide range of reasonableness" afforded to union decision-making. Marquez, 525 U.S. at 45-46. Virtually all of Jordan's evidence consists of his own conclusory allegations, such as: the "Union was incompetent," the union representative "evidence[d] his hostility . . . in the handling of [his] matter" and "had secret meetings with the employer outside of [his] presence," and the Grievance Board "did not really understand the circumstances" (Affidavit of Samuel Jordan in Opposition to Defendant's Motion for Summary Judgment ("Jordan Aff.") ¶¶ 76, 95, 97, 100). In fact, almost all of the exhibits submitted by plaintiff in opposition to these motions for summary judgment are either excerpts from his own deposition testimony (Jordan Aff., Ex. 2-11; Pl.'s Response, Ex. 1; Pl.'s 56.1, Ex. 13-21) or documents reflecting the disciplinary measures taken by Outdoor against other employees (Pl.'s 56.1, Ex. 5-6, 9-12, 23).[3] This evidence is not sufficient to defeat summary judgment. Despite plaintiff's unwavering and evidently deeply held belief that his union did not fulfill its obligations,

---

[3] The remaining exhibits are excerpts from the declarations and deposition testimony of Union officials and Outdoor employees (Jordan Aff., Ex.1; Pl.'s 56.1, Ex. 1-4, 7-8) that do not provide support for Jordan's claim and a letter from the Union stating that Jordan had filed a grievance (Pl.'s 56.1, Ex. 22).

8

Jordan's testimony amounts to a litany of conclusory allegations unsubstantiated by any evidence presented to the Court. As such, it does not rise to the level of "hard evidence" that is required to survive summary judgment. See D'Amico, 132 F.3d at 149.

Jordan also contends that certain omissions allegedly committed by the Union constitute evidence of its arbitrary, discriminatory and bad-faith conduct. In particular, plaintiff highlights the Union's failure to conduct an investigation of the circumstances surrounding his termination and the failure of Thompson – the Union business agent – to bring the disputed work sheets to the Grievance Committee hearing. However, plaintiff does not explain how these omissions constitute arbitrary conduct, discrimination or bad faith. Jordan did not dispute the fact that posters were missing from his route (Outdoor's 56.1 ¶ 50, Pl.'s Response ¶ 50), nor does the record show that Jordan urged the Union to investigate the factual basis for his termination. Indeed, plaintiff does not dispute the fact that the relevant posters were missing from the subway platforms. (Pl.'s Response ¶ 50.) Therefore, it was entirely reasonable for the Union to conclude that Jordan was not credible and that no further factual investigation was necessary by the Union or Outdoor. Jordan presents no reason to infer arbitrary conduct, discrimination or bad faith from the Union's decision not to investigate an undisputed issue.

Similarly, Jordan criticizes Thompson for allegedly representing him poorly, but Jordan fails to offer any evidence to show that Thompson's conduct was the result of arbitrary conduct, discrimination or bad faith. Even if Jordan were correct and Thompson did not carry out his duties with a satisfactory level of care and competence – and there is no showing of that – under Second Circuit law mere negligence does not constitute a breach of the duty of fair representation. Barr, 868 F.2d at 43. Without

9

evidence showing that the claimed omissions were the product of arbitrary conduct, discrimination or bad faith, they do not constitute sufficient evidence to support Jordan's claim.

Finally, Jordan offers anecdotal evidence to show that the Union pursued other grievances to arbitration in similar matters, but did not do so in his case; he contends that this constitutes evidence of discriminatory and arbitrary treatment. As with other elements of his claim, Jordan has produced no evidence to support these allegations aside from his personal belief that he was treated differently and unfairly.[4] Moreover, even if Jordan offered such evidence, it would show only that he was treated differently from other members of the Union, but different treatment does not constitute arbitrary, discriminatory or bad faith treatment. Properly functioning CBAs permit unions to treat their members differently; otherwise, unions would be unable to screen out frivolous grievances. See Humphrey, 375 U.S. at 349.

In response to Jordan's claims, the Union and Outdoor have produced evidence showing that the Union's decision not to take Jordan's grievance to arbitration was based on a determination by a committee of the Union's senior business agents, reached after hearing from Jordan himself, that he was "not credible." (Sakae Decl., Ex. F at 8:13-16.) After Jordan's supervisor detected the work sheet discrepancies, two Outdoor executives

---

[4] Plaintiff identifies one prior occasion where the Union's intervention contributed to the reinstatement of an Outdoor employee who, like Jordan, had been terminated for falsifying work sheets. However, in that case, the employee had an otherwise "clean record" with Outdoor for more than thirty years of employment. (Sakae Decl., Ex. B at 39:15-40:24.) In contrast, Jordan worked at Outdoor for approximately three and one half years prior to his termination and had received a reprimand for falsifying his time sheets two months prior to the events giving rise to his termination. (Outdoor's 56.1 ¶¶ 2, 5, 25; Pl.'s Response ¶¶ 2, 5, 25.) Other instances plaintiff advances involve employees disciplined for absenteeism, chronic lateness, substance abuse, overstating hours and insubordination, but not falsification of work sheets. (Pl.'s 56.1, Ex. 3, 4, 8-12.) Each of those grounds for discipline distinguishes those cases from Jordan's. Moreover, plaintiff's evidence documents Outdoor's disciplinary actions – not the efforts undertaken by the Union on behalf of its members – and therefore is irrelevant to the question of whether the Union breached its duty of fair representation.

met with Jordan, but Jordan offered no explanation for the discrepancies noted on his work sheets, repeating "this isn't me, this isn't me, I don't know, this isn't me." (Sakae Decl., Ex. B at 9:16-10:13, 11:7-10; Sakae Decl., Ex. D at 9:15-17.) Bracero – the Union shop steward – in fact testified that Jordan offered no defense against Outdoor's charge of document falsification, despite Bracero's attempts to "get something a little more solid [from Jordan] as far as helping his case out." (Sakae Decl., Ex. E at 23:5-18.) As noted above, Jordan was given an opportunity to explain his position before the Grievance Committee, but after discussing Jordan's testimony, the board found it "not credible" and determined not to "go forward with arbitration." (Sakae Decl., Ex. F at 6:18-8:16, 12:24-13:3.) That decision therefore was not arbitrary, discriminatory or reached in bad faith.

Plaintiff has failed to develop any evidence to contradict defendants' version of events, which has emerged from the consistent testimony of both Outdoor employees and Union representatives. Aside from Jordan's self-serving statements, all the evidence in the record is entirely consistent with an effort by the Union to advance Jordan's interests without pressing a claim that it considered frivolous. Thus, Jordan has failed to present sufficient evidence for a jury to find that the Union breached its duty of fair representation. Because demonstrating such a breach is the "threshold issue" in a hybrid section 301/duty of fair representation suit, see Young, 907 F.2d at 307, Jordan's action cannot succeed against either the Union or Outdoor, and therefore both defendants are entitled to summary judgment.

## III.   CONCLUSION

Because the evidence presented to this Court would not permit a jury to find that the Union breached its duty of fair representation, defendants' motions for summary

11

judgment pursuant to Fed. R. Civ. P. 56 are granted. The Clerk of Court is directed to enter judgment dismissing the complaint.

Dated: New York, New York
February 21, 2007

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.